Cornelio CANTU, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–00–125–CR.

Court of Appeals of Texas, Corpus Christi.

April 26, 2001.

422

Cornelio Cantu, Cotulla, Appellant (Pro Se).

Carlos Valdez, District Attorney, Corpus Christi, Attorney for the State.

Before Chief Justice VALDEZ, and Justices DORSEY and RODRIGUEZ.

## OPINION

RODRIGUEZ, Justice.

Appellant, Cornelio Cantu, pleaded guilty to aggravated assault.[1] Pursuant to a plea bargain, the trial court placed Cantu on ten years deferred adjudication community supervision. The State filed a motion to adjudicate alleging Cantu violated the terms and conditions of his community service probation. At his adjudication hearing, Cantu pleaded true to the allegations. The trial court accepted Cantu's guilty plea and imposed a ten year sentence. Cantu's appeal complains of ineffective assistance of counsel during the punishment phase of the hearing.

Before reaching the merits of Cantu's claim, we must first determine whether this Court has jurisdiction to consider Cantu's appeal. The trial court adjudicated and sentenced Cantu on February 18, 2000. Six days later Cantu filed an inmate communication form wherein he expressed a desire to appeal his case, complaining of ineffective assistance of counsel. Cantu also requested new counsel. The trial court considered this written communication a notice of appeal and appointed new appellate counsel. We construe this communication as a general notice of appeal, not effective to confer jurisdiction on this Court. *See* TEX. R.APP.P. 25.2(b)(3)(C).[2]

---

1. *See* TEX.PEN.CODE ANN. § 22.02(b) (Vernon 1994).

2. To invoke this court's jurisdiction over an appeal from a negotiated-guilty plea, a notice

■ However, Cantu also filed a timely motion for new trial again asserting inadequate representation during the punishment phase of the hearing. The motion for new trial was denied. During the hearing on the motion, Cantu asked the trial court for permission to appeal. The transcript of the hearing reveals that the court informed Cantu he did not need its permission, that "You do whatever you want." On May 10, 2000, within ninety days after sentence was imposed and, thus, before the time for filing his notice of appeal had expired, Cantu filed an amended notice specifically asserting that, by its statement, the trial court granted Cantu permission to appeal. See TEX.R.APP.P. 26.2(a)(2) (notice of appeal must be filed within 90 days after day sentence imposed if motion for new trial filed). The State has filed no response. Based on the facts before us, we conclude the trial court did grant Cantu permission to appeal. The *extra-notice requirements of rule 25.2(b)(3)* are therefore satisfied, and we have jurisdiction to address this appeal.

We next address the substantive issues raised in this appeal. Counsel filed a brief in compliance with *Anders v. California,* 386 U.S. 738, 744–45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *High v. State,* 573 S.W.2d 807, 812 (Tex.Crim.App.1978). In her brief, counsel discusses the record, reviews the punishment proceeding and motion for new trial hearing, and concludes there is no reversible error shown in the record, and that this appeal is frivolous. Counsel does, however, raise one arguable point of error which we now address.

Cantu contends he received ineffective assistance of counsel at the punishment phase of his adjudication hearing. Specifi-

cally, Cantu claims his counsel failed to properly investigate facts surrounding his background and learning of witnesses that could have testified on Cantu's behalf.

■ To establish ineffective assistance of counsel, Cantu must demonstrate from the record that (1) counsel's assistance was outside the range of competence demanded of attorneys in criminal cases, and (2) there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. See *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 988 S.W.2d 770, 770 n. 3 (Tex.Crim. App.1999) (applying *Strickland's* two-prong test to punishment phase). A reasonable probability is a probability sufficient to undermine confidence in the outcome. See *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999). The determination regarding whether a defendant received effective assistance of counsel must be made according to the facts of each case. See *Thompson,* 9 S.W.3d at 812. An appellate court looks to the totality of the representation and the particular circumstances of the case in evaluating the effectiveness of counsel. See *id.*

■ The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. See *Thompson,* 9 S.W.3d at 813. The appellate court's review of counsel's performance must be highly deferential. See *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and constituted sound trial strategy. See *id.* To

of appeal must expressly specify (1) the appeal is for a jurisdictional defect; (2) the substance of the appeal was raised in writing and ruled on before trial, or (3) the trial court granted permission to appeal. See TEX. R.APP.P. 25.2(b)(3).

defeat the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996).

Among counsel's duties is that of making an independent investigation of the facts of his client's case, although its scope may fluctuate under varying circumstances. *See Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App.1986); *see also McFarland,* 928 S.W.2d at 502 (counsel has duty to make reasonable investigations or to make reasonable decision that makes particular investigations unnecessary); *Rangel v. State,* 972 S.W.2d 827, 838, n. 8 (Tex.App.—Corpus Christi 1998, pet. ref'd) (counsel who has duty to seek and investigate potential witnesses for guilt/innocence phase, should have same duty during punishment phase). As part of this duty, counsel has a responsibility to seek out and interview potential witnesses. *See Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex. Crim.App.1990).

Three witnesses testified at the motion for new trial hearing regarding the effectiveness of trial counsel. On direct examination, Cantu's trial counsel, Jerry Dorsey, testified: (1) no witnesses were called to testify at the hearing on the motion to adjudicate on Cantu's behalf other than Cantu; (2) he had no recollection of Cantu providing him with information regarding anyone who might testify on Cantu's behalf; and (3) he did not remember speaking to Cantu's father, Cornelio Cantu, Sr., concerning his ability to testify on Cantu's behalf. On cross-examination, Dorsey testified that in an attempt to mitigate the punishment assessed and possibly convince the trial judge to continue his probation, his trial strategy at the adjudication hearing was for Cantu to testify that the gun incident was accidental, not a drive-by shooting, that he had a family, including a newborn son, and that he was working. Dorsey stated that Cantu never asked him to speak to his father. If Cantu had done so, Dorsey would have called him. Neither did Cantu ask Dorsey to postpone the hearing so that other witnesses could be contacted. Dorsey also testified that because Cantu pleaded true to the violations at the adjudication hearing, only one of five officers was called by the State to testify, thereby shortening its presentation.

Cantu's father, Cantu, Sr., also testified at the hearing. He stated that had he been contacted, he would have been willing to testify. Cantu, Sr., testified he was aware his son was having financial difficulties, due partially to the fact that Cantu's child was born only a few days after Cantu was placed on community supervision. Cantu, Sr., said that his son had secured a job, and that, because it did not pay well, he was looking for a second job. When Cantu, Sr., learned his son was not reporting, he encouraged him to do so but his son was afraid his probation would be revoked and he would be placed in jail. The family was willing to help Cantu, particularly with his drug problem. Cantu lived with his mother, who also had a drug problem and encouraged Cantu to join her in using drugs. Drug usage would not be tolerated at Cantu, Sr.'s, house. Cantu, Sr., felt his son could have succeeded if given another chance on probation, perhaps with some substance abuse treatment. On cross-examination, Cantu, Sr., stated he had observed his son regularly using drugs and would have told this to the judge. He knew that drug usage constituted a violation of his son's probation.

Finally, Cantu testified on his own behalf. Cantu stated he met only briefly with Dorsey the day of his arraignment

and one time at the jail. Dorsey asked him about the possession of the gun, but not about the failure to report to his probation officer, to change his address, or to pay his fees. Dorsey did not ask him if there was anyone who was willing to testify. Had Dorsey asked, Cantu would have given him the names of his father, his wife, and his boss. Cantu asked the court for an extension of his probation. Dorsey did not. Cantu felt that he had to argue the case himself, that he did not have the aid of an attorney. Cantu did not understand he was giving up his right to challenge the proceedings. On cross-examination, Cantu admitted he did not report for the months indicated in the motion to adjudicate; he did not report his change of address; and he possessed marijuana during his probationary period. He also testified he never told the court he did not want to proceed with the motion to adjudicate, nor did he tell the court there were witnesses he wanted to testify on his behalf. Cantu admitted he did not ask Dorsey to contact his dad, his wife, or his boss. He did not even know how his father would testify. Cantu was able to inform the court that he had a family, a job, and that he was working regularly.

On appeal, counsel for appellant concludes that the foregoing testimony shows that Dorsey erred in not investigating the facts surrounding Cantu's background and learning of witnesses that could have testified on Cantu's behalf. However, counsel also concludes that Cantu did not demonstrate the second prong of *Strickland,* that he failed to produce evidence that had his trial counsel investigated further there was a reasonable probability that the result of the proceeding would have been different.

The underlying offense for which Cantu was placed on deferred adjudication was aggravated assault, a second degree felony. The punishment range for a second degree felony is no more than twenty or less than two years confinement and a fine not to exceed $10,000. *See* TEX.PENAL CODE ANN. § 12.33(a), (b) (Vernon 1994). The court assessed a period of confinement of ten years, a "mid-range" punishment.

Cantu admitted the allegations in the motion to adjudicate were true. Cantu committed, not merely "technical" offenses, *i.e.,* failure to pay supervisory fees, but new offenses including possession of marijuana. Also, Cantu admitted to having possession of a pistol. He testified he was attempting to sell it to buy milk and diapers for his newborn son. While Cantu may have had noble motives for possessing the gun, such possession violated the terms of his community supervision, particularly when he was on probation for an aggravated offense.

Additionally, Cantu's father testified that even when Cantu was on probation, he continued to use drugs. Cantu, Sr., had personally observed Cantu take the drugs, not on just one occasion, but on two. Had Dorsey investigated and called Cantu's father to testify, the State would have elicited the testimony that it did in the new trial hearing, to wit: that Cantu purposefully failed to report and continued to use drugs despite his father's overt and expressed disapproval, and despite the fact that both actions violated the terms and conditions of his community supervision.

Accordingly, we conclude Cantu's one arguable point of error, ineffective assistance of counsel due to failure to investigate, fails because the record does not support a finding that the result of the proceeding would have been different. Indeed, Not only did Dorsey's failure to investigate not have any deleterious effect on Cantu's defense, it may actually have been helpful to Cantu in that potentially damaging testimony was not brought be-

fore the court for its consideration when it assessed Cantu's punishment.

In *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), the Supreme Court advised appellate courts that upon receiving a "frivolous appeal" brief, they must conduct "a full examination of all the proceeding[s] to decide whether the case is wholly frivolous." We have reviewed the record and, finding nothing that would arguably support an appeal, agree with counsel that the appeal is wholly frivolous. *See Stafford v. State*, 813 S.W.2d 503, 509 (Tex.Crim.App.1991).

Counsel provided Cantu with a copy of the brief and advised him of his right to file a *pro se* brief. Counsel requested an extension of thirty days for Cantu to file his brief, should he desire to do so. That time has elapsed and no such response has been received by this Court. Accordingly, the judgment of the trial court is AFFIRMED.

Additionally, in accordance with *Anders*, counsel has requested permission to withdraw as counsel for Cantu. *See Anders*, 386 U.S. at 744, 87 S.Ct. 1396. We grant Cantu's attorney's motion to withdraw. Furthermore, we order her to notify Cantu of the disposition of his appeal and of the availability of discretionary review. *See Ex parte Wilson*, 956 S.W.2d 25, 27 (Tex. Crim.App.1997).

DORSEY, Justice, not participating.