NUMBER 13-00-606-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

______________________________________________________________


BENTURA ANTUNEZ PALMA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

____________________________________________________________________


On appeal from the 208th District Court of Harris County, Texas.

____________________________________________________________________



O P I N I O N



Before Chief Justice Valdez and Justices Yañez and Castillo

Opinion by Justice Yañez


Appellant, Bentura Antunez Palma, was convicted of murder following a jury trial. Appellant now challenges his
conviction with four points of error. We affirm.

BACKGROUND

On March 14, 1992, Salvador Quiroz Razo was shot and killed outside "Cinco Estrellas," a bar in Houston, Texas. 
Witnesses testified that appellant had approached Razo inside the bar and begun to quarrel with him. The argument moved
outside of the bar, where it continued for about twenty minutes. Witnesses stated that appellant drew a revolver from his
waistband and shot Razo in the head and after Razo fell, then fired into Razo's prone body. There was testimony that
appellant also fired at an employee of the bar, before leaving the scene.

Officers of the Houston Police Department investigated the shooting, and after speaking to witnesses, decided that
appellant was a suspect. Because appellant could not be located, the police compiled a photographic lineup, using
appellant's driver's license photograph. Two of the witnesses, Ricardo Chavez and Ramon Serrano, identified appellant as
the man who had shot the victim after they were shown the photographic lineup. A warrant was issued for appellant's
arrest, but the police failed to find him. (1) Appellant was ultimately arrested in Arizona in May of 1999.

Appellant was tried before a jury in June of 2000. Testimony was adduced from several witnesses, as well as appellant. 
The jury returned a verdict of guilty. Appellant elected to have sentence imposed by the trial court, and was sentenced to
thirty years in the Institutional Division of the Texas Department of Criminal Justice. 

THE NOTICE OF APPEAL


The State argues that appellant did not file a timely notice of appeal and has thus failed to invoke the jurisdiction of this
Court. We find that appellant filed a letter with the trial court that expressed his desire to appeal from the judgment in his
case and, thus, was sufficient to constitute a notice of appeal. See Tex. R. App. P. 25.2(b)(2).

Sentence was imposed upon appellant on June 15, 2000. On June 22, 2000, appellant filed a letter with the clerk of the
district court. In the letter, appellant writes:

I would like to know the following:

1) Do I have an appeal lawyer; if so,

A) What is his/her name,

B) Address

C) Phone number

2) Do I have an appeal bond; if so,

A) How much is it?

3) If not, then why? Under the Texas Rules of Appellate Procedure, a defendant who wishes to appeal a conviction must
give notice in writing and file the notice with the trial court clerk. Tex. R. App. P. 25.2(b)(1). "Notice is sufficient if it
shows the party's desire to appeal from the judgment[.]" Tex. R. App. P. 25.2(b)(2). 

Where an appellant has timely filed a document with the clerk of the trial court that demonstrates his desire to appeal, that
document should be construed as a notice of appeal. Cooper v. State, 917 S.W.2d 474, 477 (Tex. App.-Fort Worth 1996,
pet. ref'd). (2) A request for a free record filed by a defendant would constitute such a demonstration of a desire to appeal. 
Id. (3) A motion to obtain the reporter's and clerk's records has been held to demonstrate a desire to appeal sufficient to
serve as notice of appeal. Buchanan v. State, 881 S.W.2d 376, 378 (Tex. App.-Houston [1st Dist.] 1994), rev'd on other
grounds, 911 S.W.2d 11, (Tex. Crim. App. 1995). (4) A written request for a copy of the record and for appointment of
appellate counsel has also been recognized as sufficient to serve as a notice of appeal. Massey v. State, 759 S.W.2d 18, 19
(Tex. App.-Texarkana 1988, no pet.). This Court has held that an inmate communication form, in which a convicted
defendant stated a desire to appeal and sought appointment of new counsel for the appeal, constituted a general notice of
appeal. Cantu v. State, 46 S.W.3d 421, 423 (Tex. App.-Corpus Christi 2001, no pet.). 

The letter from appellant demonstrates his desire to appeal his conviction. Appellant is not merely asking for clarification
of issues, but asks the court whether he has been appointed an appellate attorney, been given an appeal bond, and if not,
why the trial court has not taken these actions. The letter reflects appellant's desire to appeal his conviction, and shows that
he was taking the steps necessary to put the appellate process in motion. If appellant did not intend to appeal his
conviction, and was simply seeking clarification, he would not have asked the trial court why he had not been appointed
appellate counsel and given an appeal bond.

Two courts have held that an affidavit of indigence combined with a request for appointment of appellate counsel do not
constitute a notice of appeal. Rivera v. State, 940 S.W.2d 148, 149 (Tex. App.-San Antonio 1996, no pet.); Williford v.
State, 909 S.W.2d 604, 605 (Tex. App.-Austin 1995, no pet.). The courts in both cases held that the documents filed with
the trial court did not constitute an independent notice of appeal. Rivera, 940 S.W.2d at 149; Williford, 909 S.W.2d at 605. 
In the instant case, we have a different situation. Appellant is not attempting to have documents filed with the trial court
serve a dual purpose. In the instant case, we have a letter expressing a desire to appeal, which serves no purpose beyond
expressing that desire. Rivera and Williford are not on point with the situation with which we are now faced. 

The case law has generally demonstrated a dedication by the courts to the policy of protecting parties' rights of access to the
appellate courts by recognizing a variety of documents to serve as notices of appeal. It is in the interest of the jurisprudence
of the State of Texas to continue this policy and, accordingly, we hold that the appellant's letter is sufficient to demonstrate
his desire to appeal. Therefore, we have jurisdiction over this appeal. We now address the merits of appellant's case. 

THE IDENTIFICATION OF APPELLANT

In his first two points of error, appellant argues that the trial court erred by failing to suppress the identification of appellant
by Ricardo Chavez. Both of these points are based on a contention that Chavez's identification was the product of an
impermissibly suggestive identification procedure. In his first point of error, appellant challenges the admission of
Chavez's out-of-court identification; in his second point, appellant challenges Chavez's in-court identification of appellant. 
At the trial court, appellant challenged Chavez's identification with a motion to suppress and again at trial with timely
objections. Following the hearing on the motion to suppress, the trial court ruled Chavez's identification of appellant from
the photographic line-up was admissible. Appellant's trial objections were overruled.

The Standard of Review

When reviewing a trial court's ruling on the admissibility of an identification which has been attacked as having been the
product of an impermissibly suggestive pre-trial identification procedure, "[t]he test is whether, considering the totality of
the circumstances, 'the photographic identification procedure was so impermissibly suggestive as to give rise to a very
substantial likelihood of irreparable misidentification.'" Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App.
1998)(quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). The goal of the review is to determine the reliability
of the identification procedure. Id. The court of criminal appeals has held that:

[t]he following five non-exclusive factors should be "weighed against the corrupting effect of any suggestive identification
procedure in assessing reliability under the totality of the circumstances":



1. The opportunity of the witness to view the criminal at the time of the crime;

2. The witness' degree of attention;

3. The accuracy of the witness' prior description of the criminal;

4. The level of certainty demonstrated by the witness at the confrontation, and
5. The length of time between the crime and the confrontation.

Id. (citing Neil v. Biggers, 409 U.S. 188, 199 (1972)).

Each of the individual Biggers factors are historical facts, and should be viewed deferentially, in the light most favorable to
the trial court's ruling. Id. at 773. The application of the factors, and thus the "ultimate conclusion as to whether the facts
as found state a constitutional violation, is a mixed question of law and fact." Id. Therefore, we review the trial court's
application of the factors de novo. Id. at 773-74. When a trial court does not make express findings of historical facts, the
facts are viewed in a light favorable to the court's ruling. Id. at 774. 

The Identification Procedure

Chavez first identified appellant as the shooter in a photographic line-up. He then identified appellant at the trial. At the
pretrial hearing on appellant's motion to suppress Chavez's identification, Sergeant Michael Peters of the Houston Police
Department testified as to the manner in which the photographic lineup was compiled. In the course of investigating the
shooting, Peters was told by a witness that appellant had shot the victim. Peters then obtained a photocopy of appellant's
driver's license from the Texas Department of Public Safety. This photograph was included in a spread with five other
photographs of people with similar features. The five other photographs were "mugshots." To replicate the quality of the
photocopy of appellant's license photograph, all five of the mugshots were photocopied, before being included in the
photographic line-up. The lineup was shown to four witnesses, including Chavez. According to Chavez, Peters did not tell
Chavez that the line-up included a suspect, nor did Peters encourage Chavez to select appellant's photograph.

At the time of the murder, Chavez worked at Cinco Estrellas, watching the parking lot of the bar to prevent the theft of
patrons' vehicles. Chavez testified that he watched appellant and Razo argue for about twenty minutes and tried to stop the
argument. When appellant brandished a revolver, Chavez moved away from the two men, to a spot between two cars. 
According to Chavez, he saw appellant shoot Razo, and then appellant fired at Chavez. (5) Chavez stated that he did not
know appellant, but had seen him before. He testified that, although it was nighttime, the parking lot was lit well enough
for him to see clearly. Chavez testified that he had seen appellant at the club before the night of the shooting, but he did not
know his name. Chavez gave the police a description of the man who shot Razo, but the record does not detail what that
description contained. Chavez did not remember how much time elapsed between the shooting and the police showing him
the photographs, but it was only "a few days." Chavez testified that, although appellant had a goatee at the time of the
shooting, Chavez recognized appellant in the photograph, in which appellant lacked a goatee. Chavez was certain of his
identification of appellant, both from the lineup and when he saw appellant in the courtroom. (6)

Application of the Admissibility Standard of Review

Applying the Biggers factors to the case now before us, we find that the factors militate in favor of admitting Chavez's
identification of the appellant. Chavez had ample time to view the man who shot Razo; was paying a great deal of attention
at the time of the shooting, being involved in trying to stop the argument between Razo and the shooter; was certain of his
identification of appellant; and the time between his identification of appellant's photograph and the shooting was only a
matter of days. Viewed in a light favorable to the trial court's rulings, we hold that the trial court did not err in refusing to
suppress Chavez's out of court identification of appellant in the photographic lineup. Even though the photographic lineup
may have "fallen short of the ideal," the circumstances of the case indicate that Chavez's identification of appellant was
correct and appellant was not denied due process of law by the admission of the identification. See Simmons, 390 U.S. at
385-86. The same factors support the trial court's decision to allow Chavez to identify appellant at trial, except for the fifth
factor: the length of time between the crime and the confrontation. Chavez's in-court confrontation of appellant occurred
about eight years after the crime. Although this factor argues against admission, the remaining factors support the trial
court's decision to allow the identification to be admitted. Appellant's first and second points of error are overruled.

APPELLANT'S MISTAKEN IDENTIFICATION EVIDENCE

In his third point of error, appellant argues that the evidence was legally insufficient to support his conviction. In his fourth
point of error, appellant argues the evidence was factually insufficient to support his conviction. Both of these points are
based on the State's purported failure to rebut evidence brought forth by appellant to challenge the witnesses' identification
of appellant as the man who shot Razo. 

Standards of Review

When reviewing the legal sufficiency of the evidence, an appellate court considers the relevant evidence in the light most
favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). A factual sufficiency review requires that the evidence be viewed in a neutral light, favoring neither
party. Johnson, 23 S.W.3d at 7. Appellate courts must defer to the fact finder's determinations concerning the weight and
credibility of the evidence, and may disagree with the factfinder's determination "only when the record clearly indicates
such a step is necessary to arrest the occurrence of a manifest injustice." Id. at 9.

Appellant's Evidence

At trial, appellant countered the State's identification witnesses with his own testimony and the testimony of an expert who
questioned the veracity of the State's eyewitnesses regarding the identification of appellant as the man who shot the victim.
Appellant testified that he had not shot Razo and could not remember having gone to the Cinco Estrellas bar. He denied
knowing Razo and stated that he didn't believe he had been to Cinco Estrellas the night of the shooting. He contended that
he had left Houston for Mexico City in March of 1992 in an attempt to locate and reconcile with his wife, from whom he
had separated in 1991. 

Appellant also produced testimony by Dr. Jerome Brown, a psychologist. Dr. Brown testified that, although he did not
personally do research in the area of eyewitness identification, he had reviewed approximately 200 articles on the subject. 
In his opinion, Chavez's memory of the person who shot Razo may have been inaccurate because the event was traumatic
and Chavez may have been paying more attention to the pistol or defusing the argument than he was to the face of the
shooter. Dr. Brown also felt that the photographic lineup was biased because appellant's photograph was somewhat lighter
than that of the other five persons in the lineup, appellant's photograph was the only one lacking the height markings
included in mug shots, and appellant's photograph was in the center of the spread. He also believed Chavez's identification
was less accurate because Chavez had been shown a large number of photographs before seeing the photo lineup with
appellant. Dr. Brown opined that the same factors applied to Serrano's identification, except that Serrano was not shown
any photographs except those in the photographic lineup, and Serrano may not have been as traumatized by the shooting. 
Dr. Brown testified that the study of eyewitness identification is a "soft science," which does not lend itself to independent
verification, and that different people remember things with different levels of accuracy. Dr. Brown admitted that he could
not say that Chavez or Serrano had made a misidentification, nor had he done any testing on either witness's memory. Dr.
Brown explained that he was only relating factors which could affect the witnesses' memories of the man who shot the
victim, but he could not state that the factors actually affected these particular witnesses' memories.

Application of the Evidentiary Standards of Review

Appellant contends that his testimony, in which he denied shooting the victim, and the testimony of Dr. Brown, rendered
the testimony of the State's witnesses insufficient to support his conviction. We disagree. 

We must defer to the jury's determinations concerning the weight and credibility of the evidence. Johnson, 23 S.W.3d at 7. 
When we are faced with a record that supports conflicting inferences, we must presume that the trier of fact resolved such
conflicts in favor of the prosecution and must defer to that resolution. Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim.
App. 1991); Tippit v. State, 41 S.W.3d 316, 327 (Tex. App.-Fort Worth 2001, no pet.). In the instant, case the jury was
faced with two witnesses who testified that appellant was the shooter, with appellant denying the accusation. We must
presume the jury resolved this conflict in favor of the State, and we defer to its resolution.

We also cannot hold that the testimony of appellant's expert witness required an acquittal. Dr. Brown did not controvert the
testimony of the State's witnesses, but rather raised factors which the jury could weigh when considering the witnesses'
identification of appellant as the shooter. The jury was within its authority in choosing to believe the testimony of two
eyewitnesses who identified appellant. The evidence presented by the State was legally and factually sufficient to support
appellant's conviction. Appellant's third and fourth points of error are overruled.

CONCLUSION

Appellant's letter to the trial court constituted a written notice of appeal and thus, this Court has jurisdiction to consider this
appeal. The trial court did not err in admitting evidence that Ricardo Chavez had identified appellant from a photographic
lineup as the man who shot the victim, nor did the trial court err by allowing Chavez to identify appellant at the trial. 
Finally, despite appellant's testimony and attempts by appellant's expert to raise doubts about the witnesses' identification of
appellant, the evidence presented at trial was factually and legally sufficient to support appellant's conviction.

The judgment of the trial court is AFFIRMED.

 

LINDA REYNA YAÑEZ

Justice



Dissenting opinion by 

Justice Errlinda Castillo



Publish. Tex. R. App. P. 47.3.

Opinion delivered and filed this the

4th day of April, 2002.

1. Appellant testified that he moved from Houston to Mexico City in March of 1992.

2. In Cooper, the Fort Worth Court of Appeals held that the order appointing appellate counsel was "merely paperwork to
be used if Cooper decided to appeal." Cooper v. State, 917 S.W.2d 474, 477 (Tex. App.-Fort Worth 1996, pet. ref'd)
(emphasis in original). In Cooper, the order appointing appellate counsel was issued by the trial court, without any written
communication by the defendant demonstrating defendant's intention to appeal. See id., at 476-77. The facts in the case
now before this Court differ from those in Cooper, because the record in the instant case contains a written communication
from the defendant. The only written documentation in Cooper that was filed within the appellate deadlines was an order
by the trial court; the appellant filed nothing in writing until after the appellate deadlines had lapsed. Id. at 477.

3. In Cooper, the defendant filed a request for a free record, which the Fort Worth Court of Appeals stated demonstrated a
desire to appeal; however, the court noted that this request was filed three months after the judgment in the case, and was,
thus, untimely. Cooper, 917 S.W.2d at 477. The court also noted that Cooper's pro se efforts were not only untimely, but
were undertaken after he had signed written waivers of appeal. Id.

4. It is noteworthy that the court of criminal appeals, in its decision in Buchanan v. State, 911 S.W.2d 11, 15 (Tex. Crim.
App. 1995), did not dismiss the case for lack of jurisdiction, as would have been required if the appellant had failed to file a
timely notice of appeal. See Olivo v. State, 918 S.W.2d 519, 524 (Tex. Crim. App. 1996) (timely notice of appeal is
necessary to invoke the jurisdiction of the appellate courts).

5. One of the automobiles in the parking lot had a bullet hole in it, which was consistent with Chavez's claim that the
shooter also fired at him.

6. Chavez pointed appellant out as the shooter at the pretrial suppression hearing as well as at trial.