NUMBER 13-04-489-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG  

                                                               
                                                      

 

THE STATE OF TEXAS,                                                                  Appellant,

 

v.

 

GLENN DAVID PEREZ ROMERO,                                       Appellee.

                                                                                                                                      


On appeal from the 275th District
Court of Hidalgo County, Texas.

                                                     
                                                                 

MEMORANDUM OPINION

 

                          Before
Justices Yañez, Castillo, and Garza

                            Memorandum
Opinion by Justice Yañez

 








In this interlocutory appeal, the State appeals from
the trial court=s grant of appellee Glenn David Romero=s motion to suppress in-court witness identification
testimony.[1]  In a single issue, the State contends the
trial court erred in excluding the in-court identification testimony.  We affirm. 

As this is a memorandum opinion not designated for
publication and the parties are familiar with the facts, we will not recite
them here except as necessary to advise the parties of the Court=s decision and the basic reasons for it.[2]


                                                      Background

On October 19, 2002, while driving on South Tenth
Street in McAllen, Texas, Ann Hohmann saw a white Suburban slam into one car,
which, in turn, struck a third car.  The
Suburban that caused the accident left the scene, and Hohmann followed it into the
rear parking lot of a nearby Holiday Inn. 
At the suppression hearing, Hohmann testified she told the driver the
police were looking for him, and that he responded, Awell, let them come find me.@  Hohmann=s two sons, who were with her in the car, were
scared that something violent might occur. 
Hohmann drove back to the scene of the accident and reported the
Suburban=s location to the police.  When she drove back to the parking lot, she
saw the driver of the Suburban walking toward the mall.  On October 21, 2002, appellee filed an auto
theft report.

Hohmann was shown an initial photo line-up, which
included a picture of appellee.  The
first line-up contained only driver=s license photos. 
Hohmann was unable to identify appellee from the line-up.  She identified another individual, and was
told by a police officer that she had identified the wrong person.  Hohmann=s son, Joseph, was also shown the first photo
line-up and he was unable to identify appellee. 
The first photo line-up was not introduced as evidence at the
suppression hearing.








Several days later, Hohmann and her son were shown a
second photo line-up.  She  identified appellee as the driver of the
Suburban.  The second photo line-up
consisted of six photos; appellee was the only person in the line-up wearing a
suit and tie.  Joseph was shown the
second line-up at the same time his mother reviewed it.  He also identified appellee.  

In January of 2004, appellee was indicted for Aaccident involving injury.@  He filed a
motion to suppress any witness identification testimony on grounds that the
photo identification procedure was impermissibly suggestive.  

At the suppression hearing on September 3, 2004
(almost two years after the accident), both Hohmann and her son, Joseph,
identified appellee in court as the driver of the Suburban.  Both testified that they were able to
independently identify appellee regardless of whether they had seen the photo
line-up.  

At the conclusion of the hearing, the trial court
granted appellee=s motion. 
This appeal ensued.

                            Standard
of Review and Applicable Law

When reviewing a trial court's ruling on the
admissibility of an identification which has been attacked as having been the
product of an impermissibly suggestive pre‑trial identification
procedure, "the test is whether, considering the totality of the
circumstances, 'the photographic identification procedure was so impermissibly
suggestive as to give rise to a very substantial likelihood of irreparable
misidentification.'"[3]  The goal of the review is to determine the
reliability of the identification procedure.[4]  The court of criminal appeals has held that: 








[T]he following five non‑exclusive factors
should be "weighed against the corrupting effect of any suggestive
identification procedure in assessing reliability under the totality of the
circumstances":

 

1. The opportunity of the witness to view the
criminal at the time of the crime;

 

2. The witness' degree of attention;

 

3. The accuracy of the witness' prior description of
the criminal;

 

4. The level of certainty demonstrated by the
witness at the confrontation, and

 

5. The length of time between the crime and the
confrontation.[5]

 

Each of the individual Biggers factors are
historical facts, and should be viewed deferentially, in the light most
favorable to the trial court's ruling.[6]  The five factors are then reviewed de novo
against "the corrupting effect" of the suggestive pretrial
identification procedure.[7]  Although generally applied in reference to
line-ups, as opposed to photographic arrays, courts may also consider the
following additional factors:  

(1) any identification prior to the lineup of
another person;

(2) the identification by photograph of the
defendant prior to the lineup; and

(3) any failure to identify the defendant on a prior
occasion.[8]


When a trial court does not make express findings of
historical facts, the facts are viewed in a light favorable to the court's ruling.[9]









Here, the trial court made no express findings of
historical fact, except to state, in announcing its ruling, that 

The first photo line-up is not here.  Nobody was able to identifyBthe witnesses were not able to identify from the
first photo line-up.  It was only after a
secondBand in myBin this Court=s opinion, faulty and tainted line-up was exhibited
to them were they able to identify the Defendant. . . .  I will always be in doubt as to whether they=re identifying in court because of the suggestive
photo in this second line-up or was it really, truthfully and in fact as a
result of the first.  

 

                                                          Analysis

At the suppression hearing, the State conceded that
the second photo line-up was suggestive; it argued, however, that it was not so
impermissibly suggestive, under the totality of the circumstances, as to give
rise to a substantial likelihood of misidentification.[10]

We turn to a review of the non-exclusive factors
and our task of weighing them Aagainst the corrupting effect of any suggestive
identification procedure in assessing reliability under the totality of the
circumstances.@[11]  

Hohmann testified that when she confronted the
driver of the Suburban, she was approximately five feet away from him.  Her exchange with him lasted only a few brief
moments.  She testified that the incident
occurred about 8:30 p.m. and that it was dark.

The evidence supports a conclusion that Hohmann=s attention level was high.  She was able to provide a physical
description of the suspect and describe what he wearing. She described the
suspect as clean-shaven, with gray wavy hair that was combed back. 








Both Hohmann and Joseph testified that they were
able to independently identify appellee, regardless of whether they had seen
the second photo line-up.  However,
their  in-court identification of
appellee occurred almost two years after the incident.  Moreover, the trial court was entitled to
consider that neither Hohmann nor Joseph were able to identify appellee in the
first photo line-up, and that Hohmann, in fact, mistakenly identified someone
else.  The State concedes that the second
photo line-up was impermissibly suggestive. 
The procedures used with regard to the second line-up were also
questionable in that the police allowed Joseph to be present when his mother
identified appellee from the line-up.  

Considering the factors and the totality of the
circumstances, we hold that the trial court did not err in concluding that the
photo line-up was so suggestive as to present a very substantial likelihood for
irreparable in-court misidentification.[12]  Accordingly, we overrule the State=s sole issue and AFFIRM the trial court=s ruling. 

 

 

_______________________

LINDA REYNA YAÑEZ,

Justice

 

Do not publish.                                              

Tex. R. App. P. 47.2(b)

Memorandum Opinion delivered and 

filed this the 28th day of July, 2005.











[1] See Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp.
2004-05); State v. Medrano, 67 S.W.3d 892, 903 (Tex. Crim. App. 2002)
(holding State may appeal any questionable ruling that excludes evidence that
may be legally admissible, regardless of title of motion seeking exclusion, or
the wording of order excluding evidence).

 





[2] See Tex. R. App. P. 47.4.  





[3] Loserth v. State, 963
S.W.2d 770, 772 (Tex. Crim. App. 1998) (quoting Simmons v. United States,
390 U.S. 377, 384 (1968)); Palma v. State, 76 S.W.3d 638, 643 (Tex. App.BCorpus Christi 2002, pet. ref=d).





[4] Palma, 76 S.W.3d at 643. 





[5] Id. (quoting Loserth,
963 S.W.2d at 772); see Neil v. Biggers, 409 U.S. 188, 199
(1972).





[6] Palma, 76 S.W.3d at 643; see
Ibarra v. State, 11 S.W.3d 189, 195‑96 (Tex. Crim. App. 1999).   





[7] Ibarra, 11 S.W.3d at 195‑96;
Loserth, 963 S.W.2d at 773‑74.





[8] Santos v. State, 116 S.W.3d
447, 453 (Tex. App.BHouston [14th Dist.] 2003, pet. ref=d) (citing Barley v. State,
906 S.W.2d 27, 35 n.8 (Tex. Crim. App. 1995)). 






[9] Loserth, 963 S.W.2d  at 774.





[10] See id. at 772. 





[11] Palma, 76 S.W.3d at 643
(quoting Loserth, 963 S.W.2d at 772).





[12] 
See Loserth, 963 S.W.2d at 772.