

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-07-140-CR**

PATRICK RENAULT NICHOLSON                                      APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Patrick Renault Nicholson appeals his conviction for sexual assault.  In a single point, Nicholson challenges the factual sufficiency of the evidence to support his conviction.  We will affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

## II. FACTUAL BACKGROUND

On the morning of March 14, 2006, Gabriella Alvarez,[2] a housekeeper at the Hawthorne Suites in Arlington, Texas, observed a man, distinctive by his missing front teeth, standing near the suites that she was cleaning. Shortly thereafter, as Alvarez was exiting one of the suites, the man choked her with a towel, physically forced her back into the suite, and demanded money from her. Alvarez attempted to spray the assailant's face with furniture cleaner or soap to escape his grasp, but he knocked the spray can from her hand. The man ordered Alvarez to undress, and when she resisted, he took off her pants. He then pulled her into the kitchen so that he could put water on his face. The man subsequently sexually assaulted Alvarez by penetrating her vagina with his fingers. He also touched his penis to her genitals and to her mouth. He took a gold chain that Alvarez was wearing and coins from a guest's pants. When the man began to rummage through the belongings of the occupant of the suite, Alvarez escaped and summoned the police. After investigators arrived and interviewed Alvarez, they sent out a description of the suspect: "a tall, slender, black male wearing a black hooded sweatshirt and blue jeans, and

---

[2] The complainant used a pseudonym at trial. For consistency, we will use the same pseudonym here. *See* TEX. CODE CRIM. PROC. ANN. art. 57.02(f) (Vernon Supp. 2007).

. . . a black baseball hat." The report also described the man as missing a tooth.

Later that same morning, Andrea Nicole Sign was in her home, located less than half a mile from the Hawthorne Suites, when she spotted an African-American male attempting to enter her house. He banged on the window when he saw Sign and proceeded to stare and yell at her as she moved around the house. When she picked up the phone and began talking to the police, the man turned and jumped the backyard fence.

Officer Daniel Poe of the City of Arlington Police Department, while helping in the Hawthorne Suites incident involving Alvarez, noticed a police dispatch for a suspicious person that fit the same description of the suspect from the Hawthorne Suites sexual assault: "a tall, slender, black male with a black hooded sweatshirt . . . and blue jeans." Poe and another officer drove to the area where the suspicious person was reported and saw Nicholson, who matched the description from the dispatch, jump several fences in an attempt to flee from the officers. After a lengthy pursuit, officers apprehended him.

Nicholson was not found with any of the personal belongings that Alvarez claimed he had taken; however, he did have a crack pipe in his possession. He did not have any missing teeth, only a small gap between his two front teeth.

Alvarez was taken by ambulance to where Nicholson was being held, and she identified him as her assailant without any hesitation; she identified him a second time at trial. Sign also identified Nicholson from a photographic lineup as the man who had attempted to break into her house; she too identified him a second time in court.

Alvarez underwent a sexual assault examination, which revealed injuries consistent with her report of digital penetration. No DNA evidence was recovered from Alvarez or from the suite.

After hearing the above evidence, the jury found Nicholson guilty and assessed his punishment at twenty years' imprisonment and imposed a $5,000 fine. The trial court sentenced him accordingly. This appeal followed.

### III. STANDARD OF REVIEW

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is

4

manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations,

"particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

### IV. FACTUALLY SUFFICIENT EVIDENCE TO SUPPORT CONVICTION

In his sole point, Nicholson contends that the evidence is factually insufficient to support his conviction for sexually assaulting Alvarez. Specifically, Nicholson argues that the State's evidence that he is the individual who perpetrated the sexual assualt, when viewed in a neutral light, is so weak that the jury's verdict seems clearly wrong and manifestly unjust. Nicholson also argues that considering the contrary evidence—the evidence that is allegedly inconsistent with the finding that he committed the sexual assault—the jury's finding that he did commit the sexual assault is against the great weight and preponderance of the evidence.

A person commits the offense of sexual assault if the person intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (Vernon Supp. 2007). A sexual assault is without the consent of the other person if the actor compels the other person to submit or

participate by the use of physical force or violence, or the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat. *Id.* § 22.011(b)(1)–(2).

Evidence exists connecting Nicholson to the sexual assault. We review it in a neutral light to determine whether it is so weak that the jury's verdict seems clearly wrong and manifestly unjust. *See Watson*, 204 S.W.3d at 414. The evidence established that Nicholson generally matched the description of the perpetrator that Alvarez provided to police. Nicholson also matched the description of the suspect that Sign provided to the police of the man who had attempted to break into her home located less than half a mile from the location of Alvarez's sexual assault. Both women described the man as an African-American male wearing a black sweatshirt and dark pants. Additionally, Alvarez positively identified Nicholson as her attacker without hesitation shortly after the assault and at trial; Sign also positively identified Nicholson from a photographic lineup as the perpetrator in her case. Evidence existed that the physical injuries Alvarez suffered were consistent with digital penetration of her vagina; the act she claimed Nicholson performed. Viewing the evidence in a neutral light, the evidence supporting the verdict is not so weak that the jury's

7

verdict seems clearly wrong and manifestly unjust. *See Watson*, 204 S.W.3d at 414.

Nicholson claims that the following purportedly contrary evidence renders the jury's finding that he committed the sexual assault against the great weight and preponderance of the evidence. First, Nicholson suggests that Alvarez's out-of-court identification of him was tainted because it was facilitated by a police show-up and not by means of a physical or photographic lineup. But Alvarez saw the assailant's face in close proximity for a lengthy period of time during the crime, only a short period of time had passed between the time of the assault and Nicholson's identification, Alvarez was able to identify Nicholson immediately and without any hesitation, and Alvarez identified Nicholson again at trial. *See Centeno v. State*, No. 05-00-01360-CR, 2002 WL 202478, at *4 (Tex. App.—Dallas Feb. 11, 2002, no pet.) (not designated for publication) (concluding that a sexual assault victim's in-court identification of defendant was not tainted by a one-person show-up, as a face-to-face show-up between the victim and defendant happened only hours after the crime occurred, the victim identified defendant in the show-up before the police attempted to prompt her in any way, and the victim had a full twenty minutes

during the assault to observe defendant's face). Thus, the credibility of Alvarez's identification of Nicholson was a matter for the jury to resolve.

Nicholson also points out that when he was apprehended, purportedly only a short time after, and distance from, the sexual assault, he did not have the gold necklace Alvarez claimed that the perpetrator had taken from her, the money that she claimed was stolen during the attack, or the cellular phone that she asserted he had in his possession. He did, however, possess a crack pipe. Nicholson argues that the lack of these items on his person when he was arrested suggests that he never had the above-mentioned items because he was not the perpetrator. He claims it would be unreasonable to believe that he would discard these items of value but not discard illegal drug paraphernalia. Officer Poe testified, however, that the necklace, money, and cell phone, although not logged into evidence as relating to the sexual assault offense, could have been taken from Nicholson and recorded in the jail log as Nicholson's personal property when he was booked into jail. The jail log was not offered into evidence at trial. Thus, we defer to the jury's determinations concerning the weight to be given to the fact of Nicholson's alleged lack of possession of these items. *Johnson*, 23 S.W.3d at 9.

Nicholson also points out that Alvarez told police that the perpetrator was missing at least one front tooth. Nicholson is not missing either of his front teeth, but does have a small, but noticeable, gap between his two front teeth. Thus, Nicholson claims that this evidence is contrary to the jury's finding that he committed the sexual assault. Again, this relatively minor discrepancy between Alvarez's physical description of the perpetrator and Nicholson's appearance on the date of the sexual assault, was a matter for the jury to weigh and resolve. *Id.*; *Payne v. State*, 194 S.W.3d 689, 695 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (explaining that when defense is based on mistaken identity, evidence is not factually insufficient simply because conflicting identity evidence exists; rather, it is for the jury to resolve weight and credibility issues); *Palma v. State*, 76 S.W.3d 638, 646 (Tex. App.—Corpus Christi 2002, pet. ref'd) (holding jury was within its authority in choosing to believe the testimony of two eyewitnesses who identified the appellant as the perpetrator).

Overall, viewing the evidence in a neutral light, the evidence supporting the verdict is not so weak that the jury's verdict seems clearly wrong and manifestly unjust and the contrary evidence in this case is not so great that the jury's verdict may be viewed as being against the great weight of the evidence.

*See Watson*, 204 S.W.3d at 414; *Johnston v. State*, 230 S.W.3d 450, 456–57 (Tex. App.—Fort Worth 2007, no pet.) (holding that evidence was factually sufficient to support conviction for aggravated sexual assault because the jury could have resolved the conflicts in the child victim's testimony and the other evidence consistently with its finding that appellant was the perpetrator of the sexual assault against the child victim).  Because the evidence is factually sufficient to support Nicholson's conviction, we overrule his sole point. *See Johnston*, 230 S.W.3d at 454.

## V. CONCLUSION

Having overruled Nicholson's sole point, we affirm the trial court's judgment.

SUE WALKER
JUSTICE


PANEL F:    HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: June 19, 2008

11