Tracy Lamar PAYNE, Appellant

v.

The STATE of Texas, Appellee.

No. 14–04–00876–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 30, 2006.

Brian W. Wice, Houston, for appellants.

Carmen Castillo Mitchell, Houston, for appellees.

Panel consists of Justice FOWLER, FROST, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this case, appellant Tracy Lamar Payne asks us to evaluate the legal and factual sufficiency of the evidence supporting his conviction for the murder of Billy Williams. He also asks us to determine whether the trial court erred when it submitted a jury charge that authorized the jury to convict appellant as either a principal or a party over appellant's objection that the record contains no evidentiary support for the charge. Because the evidence is legally and factually sufficient to sustain appellant's conviction, and because we find no reversible error in the jury charge, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of May 2, 2003, Billy Williams went to a bar in Houston, Texas with several friends, including Sequinia Moore and Lonnie Harris. Appellant and his brother Taft were also at the bar that evening. Both appellant and Taft knew Williams and his friends. A disagreement arose between Taft and Williams and the two began arguing. At this point, the testimony of the prosecution and defense witnesses diverge; however, it is undisputed that Williams was killed during a fight in the parking lot of the bar sometime after this argument, and that his death was caused by multiple stab wounds accompanied by blunt impact trauma to the head.

In separate statements to police, Moore and Harris said that Taft, appellant, and Williams exited the bar and began fighting outside; that appellant struck Williams on the head, knocking him to the ground; that one of the two brothers yelled, "Let's go!"; that both brothers then fled the scene; and that Taft folded a knife and put it in his pocket as he fled. Bar patron Jimmy Wheeler identified appellant from a photo lineup. He told police appellant invited Williams to "go outside" where appellant and another man "jumped" Williams in the parking lot. Appellant and Taft were arrested and charged with murder.

## II. Issues Presented

Appellant presents six issues for our review. In his first two issues, he argues there is no evidence to support the jury charge permitting his conviction as a principal or a party in causing Williams's death with a knife. In issues three and four, appellant contends the evidence is legally insufficient to support his conviction as a principal or a party. In issues five and six, he challenges the factual sufficiency of the evidence supporting his conviction as a principal or a party.

## III. Evidence at Trial

Three purported eyewitnesses to the murder testified at trial. According to Moore, Taft and Williams had an argument in the bar and Williams's party decided to leave. As Moore waited outside, Taft exited the bar, followed by appellant and Williams. Moore described the events leading up to the fight in her testimony:

THE STATE: As they walk out, describe for the ladies and gentlemen what you observe.

MOORE: They was talking, arguing and arguing and they put up they [sic] dukes.

THE STATE: ... Who put up their dukes?

MOORE: Taft and [Williams].

THE STATE: What happened?

MOORE: That's when [appellant] knocked him in the head.

\* \* \*

THE STATE: I want you to describe that for the ladies and gentlemen of the jury. I want you to be [appellant] and I'll be [Williams], and I want you to show them how he struck [Williams].

MOORE: Like that (indicating).

THE STATE: Okay. With his two hands?

MOORE: All I could see was it go up. I didn't see no object or nothing.

Moore testified that Williams then turned and fell on his back, and Taft and appellant continued to strike Williams as he lay on the ground. Taft struck Williams in the "upper head portion" of his body and on his chest, while appellant was on Williams's lower torso, striking Williams "all over." Within a few seconds, appellant ran to his vehicle, calling, "Let's go!" to his brother. Moore testified that she saw Taft fold a knife and put it in his pocket before getting into appellant's vehicle, and the two men fled the scene together. According to Moore, she was eight or nine feet away from Williams during the fight.

Harris testified that he saw Taft and Williams arguing in the bar. Harris further testified that he went to his car for cigarettes and witnessed the fight while he was walking back to the bar. Harris stated Williams, Taft, and appellant were standing in the parking lot, and Taft and Williams already had "exchanged blows" before appellant "came from behind" Williams and struck Williams in the head. Williams twisted and fell on his back, and Harris could see that Williams was bleeding. According to Harris, appellant and Taft then stopped attacking Williams, and Harris heard one of the brothers yell, "Let's go!" Harris did not know which of the two brothers spoke. Harris also testified that he saw Taft fold a knife and put it in his pocket, but he was unsure if the brothers fled together or in separate vehicles.

Jimmy Wheeler did not previously know Williams, Taft, appellant, or the other witnesses. Wheeler testified that just before the fight, he had been standing about one and one-half feet from Williams at the bar.

According to Wheeler, Williams pointed out Taft and stated, "See that guy over there? That guy told me if I continue to talk to his girl, he's going to kill me." Wheeler further testified that Taft approached Williams ten to fifteen seconds later, and Wheeler heard Taft whisper to Williams, "I hear that. I told you to leave her alone. I'm going to kill you if you keep messing with her." According to Wheeler, Taft left the bar, and appellant approached Williams seconds later. Wheeler heard appellant say to Williams, "let's step outside," and watched Williams follow appellant out of the bar. Wheeler testified that appellant and Taft "jumped on [Williams] immediately." Wheeler stated that he ran outside and saw appellant and Taft run from the scene, and drive away in separate vehicles.

Dr. Dwayne Wolf, a deputy medical examiner for Harris County, testified about the medical findings. Autopsy photographs showed that Williams had ten stab wounds and a single blunt impact injury. Williams was stabbed three times in the chest, and the knife punctured his heart and both lungs. Another stab wound was located on Williams's left shoulder, and another was located high on Williams's forehead. All of the remaining five stab wounds were inflicted on the back of Williams's head and neck. The single blunt impact injury was located near the top of Williams's head, adjacent to the stab wound on his forehead. Dr. Wolf also testified that a knife is considered a deadly weapon; that a blunt object can be used as a deadly weapon; and that striking someone in the head is an act that can be considered clearly dangerous to human life.

Appellant offered the testimony of Shirley Moore,[1] who testified there was no fight between Williams and the Payne brothers. She stated she was with Taft and appellant at the bar, and that the three of them left at the same time. She further testified that appellant walked her to her car, and that she and appellant each drove to her home in their respective vehicles.

Casimiur Johnson testified that when he arrived at the bar, Taft was leaving and held the door for Johnson. Johnson stated that appellant left at the same time. Johnson testified that he went to the pool table area of the bar and could not see through the windows into the parking lot. He further testified that about forty-five minutes after he arrived, people started yelling that there was a fight outside. Johnson stated he went outside and saw a man lying in a pool of blood. Johnson was unsure whether appellant and Taft were in the parking lot at that time. During the State's cross examination, Johnson agreed that a pool ball is a blunt object and that someone could have taken a pool ball from the bar and kept it in his hand.

Nicole Thompson testified that her husband left their home on May 2, 2003 and returned the following morning with a red substance on his shirt that appeared to be blood. Thompson stated that her husband claimed he had been in a fight at a bar and that the substance on his shirt was his opponent's blood. She observed cuts on her husband's hands, but stated that her husband denied using any weapon other than his fists. Thompson called police, who took her husband to the police station. A certified crime scene investigator testified that she analyzed the stain and concluded the red substance was not blood.

## IV. DISCUSSION

### A. Is the Evidence Legally Sufficient To Support Appellant's Conviction?

We begin our analysis by addressing appellant's third and fourth issues, in

---

1. It is unclear if Sequinia Moore and Shirley Moore are related.

which he contends the evidence is legally insufficient to support his conviction as a principal or as a party. We may examine the sufficiency of the evidence under both theories together because the evidence is legally sufficient if it supports either theory. *See Rabbani v. State,* 847 S.W.2d 555, 558 (Tex.Crim.App.1992) (en banc) ("The principle is well-established that when the jury returns a general verdict and the evidence is sufficient to support a guilty finding under any of the allegations submitted, the verdict will be upheld.").

### 1. Standard of Review

■ When reviewing the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mason v. State,* 905 S.W.2d 570, 574 (Tex.Crim.App.1995) (en banc).

■ A person commits murder if he intentionally or knowingly causes the death of an individual or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). The jury may infer the existence of an intent to kill from the use of a deadly weapon. *Brown v. State,* 122 S.W.3d 794, 800 (Tex.Crim.App.2003). The jury may also infer an intent to cause serious bodily injury from the acts or words of the accused, the manner in which the offense was committed, the nature of the wounds inflicted, and the relative size and strength of the parties. *Nickerson v. State,* 69 S.W.3d 661, 667 (Tex.App.-Waco 2002, pet. ref'd).

■ A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE ANN. § 7.01 (Vernon 2003). A person is criminally responsible for an offense committed by another if, with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). In determining whether the accused acted as a party, the court may look to events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and a common design to do the prohibited act. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim.App.1994).

### 2. Analysis

■ Wheeler testified that appellant invited Williams outside, where Taft was waiting. Both Moore and Harris testified that appellant struck Williams, causing him to fall to the ground, and Moore testified that Taft and appellant continued the attack together. Moore further testified that the two men fled the scene together at appellant's urging. All three witnesses agreed that appellant participated in the fight. We therefore conclude that a rational trier of fact could find beyond a reasonable doubt that appellant's actions were intended to and did aid Taft in causing Williams's death with a knife. Because the evidence is legally sufficient to support appellant's conviction as a party in the stabbing, we need not consider the legal sufficiency of the other theories submitted. *See Rabbani,* 847 S.W.2d at 558. We overrule appellant's third and fourth issues.

### B. Is the Evidence Factually Sufficient To Support Appellant's Conviction?

### 1. Standard of Review

In conducting a factual sufficiency review, we will set aside the verdict only if (1) the evidence supporting the verdict, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt, or (2) contrary evidence, if present, is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Zuniga v. State,* 144 S.W.3d 477, 484 (Tex.Crim.App.2004). The analysis must answer the single ultimate question: Considering all the evidence in a neutral light, was the jury rationally justified in finding appellant guilty beyond a reasonable doubt? *Id.* When reviewing the evidence, we must give appropriate deference to the jury's findings in order to avoid intruding on the factfinder's role as the sole judge of the weight and credibility of the witness testimony. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000) (en banc). We do not re-evaluate the credibility of witnesses or the weight of evidence, and we will not substitute our judgment for that of the factfinder. *Johnson v. State,* 967 S.W.2d 410, 412 (Tex.Crim.App.1998). Therefore, unless the record clearly reveals a different result is appropriate, we "must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor." *Johnson,* 23 S.W.3d at 8.

### 2. Analysis

In a factual sufficiency review, we must discuss the evidence appellant argues best supports his claim. *Sims v. State,* 99 S.W.3d 600, 601 (Tex.Crim.App.2003). Appellant argues the evidence does not support the conclusion that he acted as a principal in killing Williams with a knife because only Taft was seen with a knife, and none of the witnesses saw a weapon in appellant's hands. Appellant also argues that the evidence is factually insufficient to support his conviction as a party because, "there is no evidence that he even knew Taft had a knife, or would introduce it into what appeared to be only a barroom brawl." Appellant argues that such evidence is "essential to a rational jury finding that appellant was guilty as a party ... when the evidence is viewed in a neutral light."

To support this proposition, appellant relies upon *Vodochodsky v. State,* 158 S.W.3d 502 (Tex.Crim.App.2005) and *Schiffert v. State,* 157 S.W.3d 491 (Tex. App.-Fort Worth 2005, pet. granted), both of which reversed murder convictions for factually insufficient evidence. In both *Vodochodsky* and *Schiffert,* however, the defendant was merely present during the murder but did not actively participate in the physical attack. Thus, both *Vodochodsky* and *Schiffert* are distinguishable from the facts of this case.

Appellant also relies on *Schiffert* to support his contention that his culpability as a party is dependent on his knowledge that his brother had a knife and intended to stab the victim. To the extent that *Schiffert* can be read to stand for the proposition that a party is not culpable if he does not know that the principal possesses and intends to use a particular type of weapon to commit an offense, we decline to follow it.

Evidence contrary to the verdict is not strong enough to prevent the State from meeting its burden of proof beyond a reasonable doubt. Appellant's defense was based on mistaken identity, and the jury could not have convicted him if it had found Shirley Moore's testimony more credible than that of Sequinia Moore, Harris, and Wheeler. As the finder of fact, it was within the jury's province to make credibility determinations, and we will not intrude upon that province on appeal. *Johnson,* 23 S.W.3d at 7. After examining

the evidence of appellant's actions before, during, and after the murder in a neutral light, a rational jury could have found beyond a reasonable doubt that appellant intentionally aided his brother in stabbing Williams to death. Accordingly, we overrule appellant's fifth and sixth issues.

## C. Did the Trial Court Err in Submitting a Jury Charge Authorizing Appellant's Conviction as a Principal or a Party in Williams's Stabbing Death?

In his first and second issues, appellant asserts jury charge error. The jury charge reads, in pertinent part:

> [I]f you find from the evidence beyond a reasonable doubt that ... [appellant], did then and there unlawfully, intentionally or knowingly cause the death of [Williams], by stabbing [Williams] with a deadly weapon, namely, a knife; or if you find from the evidence beyond a reasonable doubt that ... Taft Eugene Payne, did then and there unlawfully, intentionally or knowingly cause the death of [Williams], by stabbing [Williams] with a deadly weapon, namely, a knife, and that [appellant], with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Taft Eugene Payne to commit the offense, if he did; or ... if you find from the evidence beyond a reasonable doubt that ... [appellant], did then and there unlawfully intend to cause serious bodily injury to [Williams], and did cause the death of [Williams] by intentionally or knowingly committing an act clearly dangerous to human life, namely by stabbing [Williams] with a deadly weapon, namely, a knife; or if you find from the evidence beyond a reasonable doubt that ... Taft Eugene Payne, did then and there unlawfully intend to cause serious bodily injury to [Williams], and did cause the death of [Williams] by intentionally or knowingly committing an act clearly dangerous to human life, namely by stabbing [Williams] with a deadly weapon, namely, a knife, and that [appellant], with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Taft Eugene Payne to commit the offense, if he did ... then you will find [appellant] guilty as charged in the indictment.

The jury charge accurately reflects the applicable law and enables the jury to consider alternate means by which appellant could have committed the charged offense.[2] Appellant, however, argues the evidence was insufficient to warrant a charge allowing the jury to convict him as either a principal or a party in causing Williams's death with a knife.

### 1. Standard of Review

When reviewing allegations of charge error, an appellate court must first determine whether error actually exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App.2005) (en banc). If er-

---

**2.** The charge error at issue in the instant case does not involve an alleged misstatement of the law; rather, it involves an alleged error in charging the jury on a theory of guilt not raised by the evidence. *See Griffin*, 502 U.S. at 56–60, 112 S.Ct. 466 (distinguishing between charge error in which the charge correctly states the law regarding a theory of guilt not supported by legally sufficient evidence and charge error involving legal deficiencies such as misstating the law or applying a statute that violates a constitutional provision); *see also Guevara v. State*, 191 S.W.3d 203, 205-08 (Tex.App.-San Antonio, 2005, pet. ref'd) (en banc) (distinguishing a charge containing a misleading statement about the law from a charge that correctly states the law but erroneously charges on a theory of guilt not supported by the evidence at trial).

ror is found, the court must determine whether it caused sufficient harm to require reversal. *Id.* The degree of harm required for reversal depends on whether the error was preserved. *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986) (en banc). If no proper objection was made at trial, the error requires reversal only if it is so egregious and created such harm that the appellant has not had a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (en banc) (op. on reh'g). When there has been a timely objection to an improper jury charge, the error requires reversal unless it is harmless. *Id.*

▮▮▮▮▮▮ Although appellant challenges the portions of the jury charge authorizing conviction as a principal and as a party in the stabbing death of Williams, he objected at trial only to the portion of the jury charge authorizing conviction as a principal. Thus, we may reverse appellant's conviction for charge error only if the trial court: (1) erred in submitting appellant's culpability as a party in the stabbing death of Williams and the error caused appellant egregious harm; or (2) erred in submitting appellant's culpability as a principal in the stabbing death of Williams and the error caused appellant *some* harm. The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the

arguments of counsel and any other relevant information revealed by the record of the trial as a whole.[3] *Id.*

### 2. Culpability as a Party

As discussed above, the evidence is legally and factually sufficient to support appellant's conviction under the law of parties. Specifically, the evidence supports a finding that appellant intended to and did aid Taft in committing the murder by inviting Williams outside, by knocking Williams down, by striking Williams, and by signaling when to end the attack. Thus, we conclude the trial court did not err in authorizing the jury to convict appellant as a party. Accordingly, we overrule appellant's second issue.

### 3. Culpability as a Principal

Appellant argues the trial court erred in submitting the portion of the jury charge authorizing the jury to convict appellant as a principal because the autopsy photographs and Dr. Wolf's testimony indicate that the stab wounds were all located on Williams's head and upper torso. Appellant also points to Moore's testimony that when appellant and Taft struck Williams as he lay on the ground, appellant was "on the lower torso" and Taft was hitting "on the upper head portion." Appellant contends there is no evidence that he struck Williams in these areas and therefore, no evidence that he caused these wounds.[4] Finally, appellant notes that two witnesses saw Taft with a knife, but no witnesses

---

**3.** Appellant suggests we follow the harm analysis used in civil cases when an invalid theory of liability is submitted in a broad-form charge. *See Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 387–88 (Tex.2000) (holding that submitting invalid theories of liability in a single broad-form jury question is harmful error when it cannot be determined whether the jury based its verdict on one or more of the invalid theories). However, adopting a *Casteel* harm analysis in this case would conflict with binding precedent. *See, e.g., Reyes v. State,* 741 S.W.2d 414, 424–26 (Tex.Crim.

App.1987) (en banc); *Watson v. State,* 693 S.W.2d 938, 940–41 (Tex.Crim.App.1985) (en banc); *Stevenson v. State,* 745 S.W.2d 45, 47 (Tex.App.-Houston [14th Dist.] 1987, no pet.); *Martin v. State,* 704 S.W.2d 892, 895 (Tex. App.-Houston [14th Dist.] 1986, no pet.). The *Casteel* harm analysis is not on point and should not be applied in cases involving different means of committing a single offense. *See Bagheri v. State,* 119 S.W.3d 755, 761–62 (Tex.Crim.App.2003).

**4.** However, two witnesses testified appellant struck Williams in the head.

claimed to have seen appellant with a weapon.

Assuming for the purposes of this discussion that the evidence is legally insufficient to support appellant's conviction as a principal, and that the trial court erred in authorizing the jury to convict on this basis, we consider the *Almanza* factors to determine whether the alleged error harmed appellant.

██ When a charge authorizes a jury to convict a defendant as a principal or a party and the evidence establishes the defendant's guilt only as a party, error in submitting the defendant's guilt as a principal is harmless under the *Almanza* standard. *See Watson v. State*, 693 S.W.2d 938, 939–42 (Tex.Crim.App.1985) (en banc). In *Watson*, the defendant was charged with burglary. *Id.* at 939. The only evidence of the defendant's guilt were his statements that he and two other men planned to burglarize the complainant's home; that he waited outside in a car while others removed property from the residence; and that he opened and disposed of some gifts removed from the building by others. *Id.* at 940. Although

there was no evidence the defendant entered the building, the jury charge permitted the defendant to be convicted if the jury found that he committed the burglary "acting either alone or as a party to the offense." *Id.* The Court held the charge was not harmful under *Almanza* because "the evidence presented at trial clearly showed [the defendant's] guilt as a party." *Id.* at 941. This principle is now firmly entrenched in Texas law.[5] We also note that this analysis and result is consistent with federal criminal law. *See Griffin v. United States*, 502 U.S. 46, 51–60, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).

██ As discussed above, the evidence clearly supports appellant's guilt as a party, and the State emphasized this theory. Although the prosecutor stated that some members of the jury could believe appellant acted as a principal, the State did not encourage the jury to reach that conclusion, nor did it direct the jury to any evidence that would support appellant's guilt as a principal.[6] After considering the entire jury charge, the evidence, the arguments of counsel, and all other relevant information revealed by the record, we

5. *See, e.g., Reyes,* 741 S.W.2d at 424–26 (assuming there was no evidence of the defendant's guilt as a principal in the murder and concluding that any error in charging the jury on the defendant's guilt as a principal was harmless because the evidence clearly supported his guilt as a party); *Stevenson,* 745 S.W.2d at 47 (relying on *Watson* and holding that, even if no evidence supported the defendant's guilt as a principal, any error in charging the jury as to the defendant's guilt as a principal to the murder was harmless); *Martin,* 704 S.W.2d at 895 (relying on *Watson* and stating that, even if no evidence supported the defendant's guilt as a principal, any error in charging the jury on the defendant's guilt as a principal was harmless); *Bruton v. State,* 921 S.W.2d 531, 537–38 (Tex.App.-Fort Worth 1996, pet. ref'd) (holding that the trial court's error in charging the jury on the defendant's guilt as a principal was harmless); *Guillory v. State,* 877 S.W.2d 71, 73–74 (Tex.App.-Hous-

ton [1st Dist.] 1994, pet. ref'd) (relying on *Watson* and holding that, even if no evidence supported the defendant's guilt as a principal, any error in charging the jury was harmless).

6. The prosecutor told the jury it could convict appellant if it found appellant guilty in one of eight ways. The prosecutor further told the jury:

[W]hat you've got to do when you go back there to deliberate is you think to yourself 'Did [appellant] or Taft Payne do one of those specific things we talked about? Did they intentionally or knowingly stab, strike with a blunt object, or do one of two ways something clearly dangerous to human life?' And then you think if they didn't do the specific act, were they a party to the act done by the other individual? If you decide, okay, in my opinion, Taft Payne had the knife, stabbed Billy Williams, then your

conclude that any error in authorizing the jury to convict appellant as a principal was harmless.[7] Accordingly, we overrule appellant's first issue.

## V. CONCLUSION

In sum, we hold the evidence is legally and factually sufficient to support appellant's conviction for the murder of Billy Williams. We further hold the trial court did not err in charging the jury on appellant's potential guilt as a party and that any error in charging the jury as to appellant's potential guilt as a principal was harmless. Therefore, we affirm the trial court's judgment.

next step in that process is, does that mean that [appellant] is a party to the action of the other one . . . As an individual, you have to be convinced that one of those eight ways happened, but as a group, you don't have to decide which one of them happened. What does that mean? It means two of you can believe [appellant] had the knife and stabbed [Williams] intentionally and knowingly. Two can believe [appellant] had the knife. Two can believe [appellant] assisted, intentionally and knowingly.

7. Appellant cites a number of cases that are not on point and do not alter our analysis in this case. *See Guevara v. State*, 152 S.W.3d 45, 52–54 (Tex.Crim.App.2005) (holding that the court of appeals erred in applying a Rule 44.2(b) instead of an *Almanza* harm analysis to jury charge error and stating that charge-error cases are distinguishable from *Bagheri* ); *Bagheri v. State*, 119 S.W.3d 755, 763–64 (Tex.Crim.App.2003) (reversing a conviction where it was impossible to tell whether the jury convicted the defendant on the basis of erroneously admitted testimony); *Ovalle v. State*, 13 S.W.3d 774, 785–88 (Tex.Crim.App. 2000) (en banc) (concluding that some harm resulted from an erroneous instruction authorizing the jury to consider all evidence from the guilt/innocence phase—without mentioning evidence from the punishment phase—in

the punishment phase of death penalty case); *Hutch v. State*, 922 S.W.2d 166, 170–74 (Tex. Crim.App.1996) (en banc) (plurality op.) (finding egregious harm from a jury instruction that did not correctly state the applicable law); *Johnson v. State*, 739 S.W.2d 299, 302–5 (Tex.Crim.App.1987) (en banc) (plurality op.) (reversing a conviction when the evidence raised an issue as to whether the defendant was guilty under the law of parties and the trial court denied the defendant's request to have the charge apply the law of parties more explicitly to the facts of the case); *Bufkin v. State*, 179 S.W.3d 166, 172–75 (Tex. App.-Houston [14th Dist.] 2005, pet. granted) (concluding that some harm resulted from the trial court's erroneous refusal to charge the jury on the defense of consent and relying on the Court of Criminal Appeals's precedents addressing a trial court's refusal to charge the jury on defenses); *Lindsay v. State*, 102 S.W.3d 223, 230–31 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (concluding that some harm resulted from the trial court's refusal to include the statutory definition of "criminal responsibility" in the punishment phase charge, even though that term was used in the charge). Appellant also relies on *Tate v. State*, but fails to note that its holding was reversed. 793 S.W.2d 760, 765 (Tex.App.-Fort Worth 1990), *rev'd* 811 S.W.2d 607 (Tex. Crim.App.1991) (en banc).