Affirmed and Memorandum Opinion filed March 31, 2009








Affirmed and Memorandum Opinion filed March 31, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00047-CR

____________

 

EDWARD BENJAMIN BAKER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 263rd
District Court

Harris County, Texas

Trial Court Cause No. 1080742

 



 

M E M O R A N D U M   O P I N I O N

Appellant Edward Benjamin Baker appeals his conviction for
murder.  In three issues, appellant challenges the sufficiency of the evidence
and the inclusion of an instruction on the law of parties in the jury charge. 
We affirm.

I.  Background








On the evening of the complainant Larry Savala=s death, appellant
went to a nightclub with his brother Marky and Richard Sosa.  While they were
in the nightclub, a fight broke out between the three men and a group of
African-American men.  Security guards broke up the fight and removed
appellant, Marky, and Sosa from the nightclub.  The fight resumed in the
parking lot in front of the nightclub, and Sosa was Aknocked out@ by one of the
African-American men.  Appellant then retrieved a gun from the group=s car and the
African-American man fled back toward the front of the club, where the
complainant and others were standing.  Appellant fired a series of shots, and
the complainant was killed.

Although accounts differed as to whether appellant first
fired into the air, several witnesses saw appellant shoot toward the front of
the club.  Although those witnesses did not see the complainant fall, one
witness saw appellant shoot toward the same area where that witness later found
the complainant=s body, and another witness saw appellant
shoot towards the area where the complainant was standing.

Security Guard Francisco Bonilla testified that he saw the
complainant fall.  He further testified that although he had a clear line of
sight to appellant, he never saw appellant shoot into the air.  He watched
appellant fire multiple shots towards the club, in the direction of the
complainant, and at approximately the height of a man.  As appellant shot in
the complainant=s direction, the complainant fell Alike he was
already gone@ and did not move or cry out for help.  While Bonilla
believed appellant shot the complainant, he was uncertain as to whether the
bullets fired by appellant actually struck the complainant.

Bonilla gave a sworn statement to a Spanish-speaking
officer who transcribed it into English and read it back to Bonilla in Spanish
for accuracy.  In Bonilla=s sworn statement and in his trial
testimony, he described seeing Marky Asnatch@ or Atake@ the gun away from
appellant.  In both accounts, Bonilla claimed Marky approached the fallen
complainant and pointed the gun at him, at which point Bonilla drew his pistol
and told Marky to stop.  In his sworn statement, Bonilla stated that he saw
Marky shoot the complainant at that point.  But at trial, Bonilla testified
that his prior statement was erroneously translated, and that after he told
Marky to stop, Bonilla took cover and heard a shot but did not see where it was
directed.  Bonilla acknowledged, however, that his memory of the incident might
have been better when he gave the sworn statement.








Homicide Detective Millard Waters read Sosa=s sworn statement
into evidence, in which Sosa recounted a phone conversation with appellant
approximately fifteen minutes after the shooting.  Sosa stated that appellant
claimed to have shot Athe guy at the club@ and that Marky
could be heard in the background telling appellant Ayou shot the wrong
guy, that was a Mexican guy laying on the ground@ and Athat=s the first guy
you ever shot.@

Deputy Chief Medical Examiner Dr. Dwayne Wolf testified
that the complainant sustained two gunshot wounds, one to the head and the
other to the neck, both of which traveled through the complainant=s body from right
to left and either of which was capable of killing him.  Dr. Wolf acknowledged
that if the complainant was shot at two different times, both wounds would have
had to have been created by bullets traveling at the same angle and trajectory.

In its charge, the court instructed the jury that it could
find appellant guilty of murder as a principal (under the theory of transferred
intent) or as a party.  The jury returned a general guilty verdict and the
court assessed punishment at forty years= imprisonment. 
Appellant challenges the sufficiency of the evidence and contends that the
trial court erred in instructing the jury on the law of parties.

II.  Legal and Factual Sufficiency








In his second and third issues, appellant challenges the
legal and factual sufficiency of the evidence supporting his conviction.  In
reviewing a legal sufficiency challenge, we view the evidence in the light most
favorable to the verdict and determine whether a rational trier of fact could
have found the essential elements of a crime beyond a reasonable doubt.  Salinas
v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).  The jury, as the
trier of fact, Ais the sole judge of the credibility of
the witnesses and of the strength of the evidence.@  Fuentes v. State,
991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose to believe or
disbelieve any portion of the testimony.  Sharp v. State, 707 S.W.2d
611, 614 (Tex. Crim. App. 1986).  The jury may also draw reasonable inferences
from basic facts to ultimate facts.  Clewis v. State, 922 S.W.2d 126,
133 (Tex. Crim. App. 1996).  When faced with conflicting evidence, we presume
the trier of fact resolved conflicts in favor of the prevailing party.  Turro
v. State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In evaluating the factual sufficiency of the evidence, we
view all the evidence in a neutral light and will set aside the verdict only if
we are able to say, with some objective basis in the record, that the
conviction is clearly wrong or manifestly unjust because the great weight and
preponderance of the evidence contradicts the jury=s verdict.  Watson
v. State, 204 S.W.3d 404, 414B17 (Tex. Crim.
App. 2006).  We cannot declare that a conflict in the evidence justifies a new
trial simply because we disagree with the jury=s resolution of
that conflict, and we do not intrude upon the fact-finder=s role as the sole
judge of the weight and credibility of witness testimony.  See id. at
417; Fuentes, 991 S.W.2d at 271.  The fact-finder may choose to believe
all, some, or none of the testimony presented.  Chambers v. State, 805
S.W.2d 459, 461 (Tex. Crim. App. 1991); In re A.B., 133 S.W.3d 869, 872
(Tex. App.CDallas 2004, no pet.).  In our review, we discuss the
evidence that, according to appellant, undermines the jury=s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

The standard of review is the same for both direct and
circumstantial evidence.  See Kutzner v. State, 994 S.W.2d 180, 184
(Tex. Crim. App. 1999).  Indeed, circumstantial evidence alone may be
sufficient to support a finding of guilt.  Id.  The charge authorized
the jury to convict appellant of murder either as a principal[1]
or as a party.  We will uphold the jury=s general guilty
verdict if the evidence is sufficient to support a finding of guilt under
either of the theories submitted.  Guevara v. State, 152 S.W.3d 45, 49
(Tex. Crim. App. 2004).








Appellant contends the evidence shows that it was actually
Markey who shot the complainant.  As appellant points out, no witnesses could
testify that they actually saw the bullets fired by appellant hit the
complainant.  But the trial testimony shows appellant shot multiple times at
head level in the same direction where the African-American man fled and where
the complainant and others were standing.  Bonilla testified that he believed
appellant shot the complainant.  According to Bonilla, when appellant shot in
the complainant=s direction, the complainant fell like Ahe was already gone@ and did not move
or cry for help.  Further, the medical examiner testified that either of the
complainant=s wounds could have resulted in his death, and those
wounds were inflicted by bullets traveling along the same angle and
trajectory.  Finally, Sosa=s statement that appellant admitted
shooting the complainant was read to the jury.  The jury was free to infer from
the evidence that appellant shot at the fleeing man with the intent to kill or
seriously injure him, missed, and hit and killed the complainant instead.  See
Clewis, 922 S.W.2d at 133 (jury may draw reasonable inferences
from basic facts to ultimate facts); Adanandus v. State, 866 S.W.2d 210,
215 (Tex. Crim. App. 1993) (a firearm is a deadly weapon; intent to kill may be
inferred when a defendant uses a deadly weapon in a deadly manner); Godsey
v. State, 719 S.W.2d 578, 580B81 (Tex. Crim.
App. 1986) (holding specific intent to kill may be inferred where defendant
used firearm and fired or attempted to fire at a person).

Appellant points to conflicting evidence as to whether Marky
shot the complainant.  Bonilla testified at trial that he only heard Marky
shoot but did not see where he directed the shot, contradicting his prior sworn
statement that he actually watched Marky shoot the complainant.  The jury was
free to believe Bonilla=s trial testimony over his previous
statement to police, see Chambers, 805 S.W.2d at 461; Sharp, 707
S.W.2d at 614, and to infer from that and the medical examiner=s testimony that
Marky did not shoot the complainant.  See Clewis, 922 S.W.2d at 133. 
The inconsistency goes to Bonilla=s credibility, and
the jury is the sole judge of that issue.  See Fuentes, 991 S.W.2d at
271.








Alternatively, because Bonilla testified that Marky only
shot once, even if the jury believed that Marky shot the complainant, the jury
was free to infer that appellant had already shot the complainant at that time
in light of (1) evidence that multiple shots were fired, (2) Sosa=s statement that
appellant admitted shooting Athe guy at the club,@ (3) Bonilla=s testimony that
after appellant shot in the direction of the complainant, he fell like he was Aalready gone,@ and (4) the
medical examiner=s testimony that the complainant was shot
twice and both wounds were capable of killing him.  See Clewis, 922
S.W.2d at 133.

For purposes of our legal sufficiency review, we have
reviewed the evidence in the light most favorable to the verdict, and conclude
that a rational trier of fact could have found beyond a reasonable doubt that
appellant murdered the complainant through transferred intent.  Salinas,
163 S.W.3d at 737.  For purposes of our factual sufficiency review, we have
reviewed the evidence in a neutral light, and find no objective basis in the
record for saying that the jury=s verdict was clearly wrong or manifestly
unjust because it was contradicted by the great weight and preponderance of the
evidence.  Watson, 204 S.W.3d at 414B17.  Rather, the
circumstantial evidence discussed above was sufficient to support the verdict
under the transferred intent theory, see Kutzner, 994 S.W.2d at 184, and
the contrary evidence did not render that evidence factually insufficient under
the applicable standard of review.  Because we hold that the evidence is
legally and factually sufficient to support appellant=s conviction as a
principal, we need not determine whether the evidence was legally or factually
sufficient to support a verdict under a party theory.  See Guevara, 152
S.W.3d at 49; Alvarado, 912 S.W.2d 199, 225 (Tex. Crim. App. 1995).  We
therefore overrule appellant=s second and third issues.








III.  Jury Charge Error

In his first issue, appellant contends that the trial court
erred in charging the jury on the law of parties.[2] 
In general, an instruction on the law of parties is appropriate where there is
evidence to support a jury verdict on that theory.  See Ladd v. State, 3
S.W.3d 547, 564 (Tex. Crim. App. 1999) (citing McCuin v. State, 505
S.W.2d 827, 830 (Tex. Crim. App. 1974)).  If the charge is given erroneously
and is objected to (as it was here), the error requires reversal unless it is
harmless, i.e. upon a showing of Asome harm.@  Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc) (op. on reh=g); Bargas v.
State, 252 S.W.3d 876, 899 (Tex. App.CHouston [14th
Dist.] 2008, no pet.).  Even where proper objection is made at trial, when the
jury was charged under alternative theories, no harm is shown where (1) the
evidence clearly supports the defendant=s guilt under an
alternate theory unaffected by the erroneous portion of the charge, (2) it is
very likely the jury=s verdict was based on an alternate
theory, and (3) the State relies most heavily on one or more alternate theories
rather than the erroneous theory.  See Rivera v. State, 12 S.W.3d 572,
577 (Tex. App.CSan Antonio 2000, no pet.); see also Cathey v.
State, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999) (no harm where verdict
based on parties theory would have been irrational under the evidence);
Payne v. State, 194 S.W.3d 689, 698B99 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d) (where evidence clearly supported guilt
as party and State relied on that theory, any error in charging under principal
theory was harmless); Black v. State, 739 S.W.2d 638, 642B43 (Tex. App.CDallas 1987, no
pet.) (although prosecutor referred to law of parties in voir dire and closing,
any error in charging jury on law of parties was harmless, where State=s argument focused
on defendant=s guilt as a principal and evidence was sufficient to
convict defendant under that theory).








Assuming, without deciding, that the charge was erroneous,
we have already determined that the evidence was sufficient to convict
appellant as a principal.  Sosa=s sworn statement, eyewitness testimony
regarding appellant=s actions, and the medical evidence all
clearly support the jury=s verdict under that theory.  Furthermore,
if we accept appellant=s claim that the evidence does not reflect
that he assisted Marky in any way, then the jury almost certainly did not rely
upon the parties instruction in arriving at its verdict, but rather based the
verdict on the evidence tending to show appellant=s guilt under the
theory of transferred intent.  See Ladd, 3 S.W.3d at 564B65; Cathey,
992 S.W.2d at 466.  But even if there is some evidence that appellant acted as
a party, the State placed little reliance on the parties theory.  The State did
not rely on it during opening statements, nor did the State specifically
examine the witnesses in that regard.  Although the State discussed the law of
parties in closing arguments in response to appellant=s defensive theory
that Marky shot the complainant, the State also argued in closing that a guilty
verdict under the law of parties would be in complete disregard of the evidence
and that neither prosecutor believed that the evidence supported Marky=s having shot the
complainant.  It seems unlikely that the jury would convict appellant on the
parties theory in light of such an argument by the State.  See Payne,
194 S.W.3d at 698B99; Black, 739 S.W.2d at 642B43.  Having
reviewed the record, we find no harm in any error the trial court may have
committed by charging the jury on the law of parties.  Appellant=s first issue is
overruled.

Having overruled all of appellant=s issues, we
affirm the trial court=s judgment.

 

 

/s/      Leslie B. Yates

Justice

 

 

Panel consists of
Justices Yates, Seymore, and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  In accordance with the rule of transferred intent, the jury was
properly instructed that appellant was criminally responsible for causing the
complainant=s death if the jury believed beyond
a reasonable doubt that appellant intentionally or knowingly shot at an unknown
person with intent to kill him or cause serious bodily injury to him, but
missed the unknown person, hit the complainant, and caused the complainant=s death instead.  See Tex. Penal Code Ann. ' 6.04(b)(2) (Vernon 2003).

 





[2]  Appellant was charged as a party to the complainant=s murder by soliciting, encouraging, aiding, or
attempting to aid Marky with the intent to promote or assist Marky=s murder of the complainant.  See Tex. Penal
Code Ann. ' 7.02(a)(2) (Vernon 2003).